<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| Contel Global Marketing, Inc., | : | Civil Action No. 01-238 (SRC) (MAS) |
| Plaintiff, | : | |
| v. | : | |
| Cotera, et al., | : | |
| Defendants. | : | |

**SHIPP, United States Magistrate Judge**

<u>REPORT AND RECOMMENDATION</u>

Before this Court is a dispute that arose due to the failure of both parties to abide by the very detailed, specific terms of a Consent Order that provided the procedure for selection of an arbitrator. Even though the parties clearly and unequivocally agreed to deviate from a provision within the Consent Order, Defendants now assert that the parties should be required to start all over and proceed pursuant to the specific terms of the original Consent Order. Conversely, Plaintiff asserts that the parties should be required to proceed with the arbitration as is, under the same arbitrators and process that the parties have been using for over one year. Based on this disagreement, the Court permitted both parties to file motions. As such, this matter comes before the Court upon Contel Global Marketing, Inc.'s ("Contel" or "Plaintiff") motion to compel defendants Aldo Pesce Cotera, Clear River Corporation, Nova Agencia DeCarga, S.A. and Agricola Punta Arenas Lida (collectively, "Defendants") to continue with arbitration proceedings before Kevin Condon and Manuel Garcia-Linares, Esq. (collectively, "Arbitrators"). (Doc. No. 91.) Also currently pending before this Court is

Defendants' motion to compel enforcement of the Consent Order signed on December 15, 2006 (Doc. No. 85 ("Consent Order")) as written. (Doc. No. 90.)

For the reasons set forth below, the undersigned respectfully recommends that the Court grant Plaintiff's motion and deny Defendants' motion.

## I. **Background**

In 1996, the parties entered into a contract whereby Defendants agreed to purchase fruits and vegetables from growers in Chile and ship the produce to Plaintiff, a New Jersey company, for distribution in the United States. (Defs.' Moving Br. 4.) A dispute concerning the four growing seasons between 1996 and 2000 later arose between the parties. (*Id.*) Specifically, Plaintiff alleged that Defendants had overstated both the purchase prices and transportation costs of the produce. (*Id.*) Plaintiff subsequently brought this litigation against Defendants in 2001, alleging breach of contract, fraud, civil conspiracy, tortious interference and violations under the Racketeer Influenced and Corrupt Organizations Act ("RICO"). (*Id.*)

After the close of fact discovery on December 31, 2005, and before completion of expert discovery, the parties agreed to have their dispute resolved by arbitration. (*Id.* at 4-5; Pl.'s Moving Br. 4.) As such, this Court entered a Consent Order on December 15, 2006, which dismissed the civil suit and directed the parties to engage in arbitration, outlining the arbitration process and the procedure by which an arbitrator would be selected. (*See generally* Consent Order.) The Consent Order mandated that the arbitration proceedings occur in two phases: (1) the "final correct reconciliation of the accounts," or "accounting" phase; and (2) the legal phase, in which the arbitrator would consider the parties' claims and defenses. (*Id.* at ¶ 5.) To this end, the Consent Order also contemplated that the parties would choose one arbitrator who was both an attorney and a Certified Public Accountant

("CPA"). (*Id.* at ¶ 3.) The Court retained jurisdiction for the purpose of enforcing the terms of the Consent Order as needed. (*Id.* at 4.)

The parties experienced continued difficulty in attempting to select a single arbitrator for both phases of their dispute. (Defs.' Moving Br. 6.) In the event such a dispute arose, the Consent Order required Plaintiff and Defendants to each select one arbitrator who, together, would agree on a single arbitrator to conduct the arbitration. (Consent Order ¶ 4.) Instead of following this procedure, however, the parties mutually agreed to enter into engagement agreements with two arbitrators: (1) a CPA to conduct the accounting phase; and (2) an attorney to conduct the legal phase and to provide recommendations for legal issues that might arise during the accounting phase. (Pl.'s Moving Br. 6.)

During the accounting phase, a dispute arose regarding certain documents that were presented to the Arbitrators for consideration. (*Id.* at 7.) These documents ostensibly should have been produced by Defendants during discovery and, because they were not produced, Plaintiff objected to their inclusion in the accounting phase of arbitration. (*Id.*) On October 8, 2009, the legal arbitrator provided his recommendations regarding the dispute. (*Id.* at 9.) On November 17, 2009, the accounting arbitrator rendered a decision regarding the dispute that was adverse to the Defendants and effectively excluded the contested documents. (*Id.*) Defendants alleged that the Arbitrators had materially breached their engagement agreements and, on November 23, 2009, terminated their engagements with the Arbitrators and withdrew altogether from the arbitration proceedings. (*Id.*; Defs.' Moving Br. 11.)

Subsequently, on December 11, 2009, after approximately fifteen months of arbitration (Pl.'s Moving Br. 2), the parties filed the motions currently pending before this Court. (Doc. Nos. 90 and 91.) Because the parties' motions are factually and legally intertwined, the Court simultaneously heard oral arguments from the parties regarding their respective motions.

## II. Discussion

For the reasons expressed below, the undersigned respectfully recommends that the Court grant Plaintiff's motion to compel the parties to proceed with arbitration using the arbitrators selected by the parties pursuant to its inherent power to enforce its decrees and/or pursuant to the doctrine of equitable estoppel. Accordingly, the undersigned also respectfully recommends that the Court deny Defendants' motion to enforce the Consent Order as written. The Court will provide a separate discussion regarding each below.

### A. The Court Should Require the Parties to Proceed with Arbitration

It is well-settled law that this Court has "inherent power to enforce a consent decree in response to a party's non-compliance." *Holland v. N.J. Dep't of Corr.*, 246 F.3d 267, 270 (3d Cir. 2001). "A court should interpret a consent decree as written and should not impose terms when the parties did not agree to those terms." *Id.* at 281 (citing *Halderman v. Pennhurst State Sch. & Hosp.*, 901 F.2d 311, 319 (3d Cir. 1990)). "[T]he scope of a consent decree must be discerned within its four corners, and not by reference to what might satisfy the purposes of one of the parties to it." *United States v. Armour & Co.*, 402 U.S. 673, 682 (1971). A consent order "is an order of the court and thus, by its very nature, vests the court with equitable discretion to enforce the obligations imposed on the parties." *United States v. Local 359, United Seafood Workers*, 55 F.3d 64, 69 (2d Cir. 1995); *see also United States v. Gov't of the V. I.*, 363 F.3d 276, 290 (3d Cir. 2004). In addition, "[u]ntil parties to such an instrument have fulfilled their express obligations, the court has continuing authority and discretion—pursuant to its independent, juridical interests—to ensure compliance." *Holland*, 246 F.3d at 283 (quoting *Local 359*, 55 F.3d at 69) (internal quotations omitted).

Pursuant to the Consent Order, "this Court retains jurisdiction over this matter for purposes of enforcing the terms of this Order . . . ." (Consent Order 4.) As set forth above, the Consent Order

provided for a two-phase arbitration process to be conducted by a single arbitrator who was both an attorney and a CPA, setting forth a specific arbitrator-selection process. It is undisputed that the parties mutually agreed to forgo the arbitrator-selection process described in the Consent Order in favor of an alternate selection process. It is also undisputed that the parties agreed on two arbitrators instead of one for the two-phase arbitration process set forth in the Consent Order.

Defendants assert that compelling the parties to proceed with arbitration with the selected Arbitrators would constitute an impermissible modification of the Consent Order and argue that "[a] court should interpret a consent decree as written and should not impose terms when the parties did not agree to those terms." (Defs.' Opp'n Br. 20, quoting *Holland*, 246 F.3d at 281.) Defendants state that the parties engaged in an "experiment" when they entered into the alternative arbitrator-selection process and the experiment failed. (Defs.' Moving Br. 2; Defs.' Opp'n Br. 27.) In effect, the Defendants assert that since the parties deviated from the express Consent Order provision regarding selection of one arbitrator, the Court must force the parties to start from the beginning.[1]

Plaintiff, on the other hand, asserts that the parties acted pursuant to the terms of the Consent Order when they engaged the Arbitrators and arbitrated with them for over a year. Plaintiff points to language within the accounting arbitrator's engagement agreement, which explicitly states that the contract would be executed "[p]ursuant [to] the Consent Order." (Affidavit of Thomas A. Della Croce ("Della Croce Aff.") 65, Ex. K at 1.) Also, Plaintiff notes that the engagement agreement with the legal arbitrator expressly refers to the Consent Order's unique arbitration procedure (i.e., the arbitration's dual phases). (*Id.* at 55-56, Ex. H at 1-2.) In addition, the legal arbitrator's formal

---

[1] Notably, Defendants only made this assertion after the arbitrator issued an adverse decision. This Court's decision is not to be interpreted as ruling on the merits of Defendants' assertion that the accounting arbitrator's ruling was erroneous. Questions concerning the merits of the arbitrator's ruling are not appropriately before the Court and, as such, to the extent that Defendants discussed the issue in Defendants' papers, the Court will not make a recommendation regarding same.

recommendation describes the arbitration as proceeding pursuant to the terms and provisions set forth under the Consent Order. (*Id.* at 78-79, Ex. M at 1-2.) Indeed, Plaintiff submitted an e-mail message exchange between counsel during the arbitrator selection process to demonstrate that neither party understood or believed that the deviation from the specific arbitrator-selection provision was meant to constitute an experiment. (*Id.* at 50-52, Ex. G at 1-3.) The e-mail messages exchanged between Thomas A. Della Croce, counsel for Plaintiff, and William Brown, counsel for Defendants, provided:

> January 3, 2008 e-mail message from Thomas A. Della Croce, counsel for Plaintiff:
> "I am hopeful we can attend to getting this arbitration started and completed. To reiterate . . . I think your proposal to employ separate arbitrators for the accounting phase and, if necessary, the legal . . . phase makes practical sense, given the difficulty we've had in finding one person with practical experience in both areas." [At this point, Mr. Della Croce sets forth a few proposals regarding the retention of the arbitrators.] "[I]f my proposal is unacceptable to you and/or your client, it seems to me that it is time to invoke paragraph 4 of the [sic] Judge Chesler's Consent Order As To Arbitration, which provides for the selection of an arbitrator in the event we are unable to agree. . . . Given the extent of time that has passed since that Order was issued, I will ask for your cooperation in implementing paragraph 4 forthwith . . . ."
>
> January 6, 2008 e-mail message from William Brown, counsel for Defendants:
> "I agree that we should get the arbitrator in place as soon as practicable. I also agree with your proposal to interview Danny [a candidate] as soon as possible. . . . If during the interview Danny does not feel he is qualified to consider the issue . . . we can turn to Garcia-Linares or another lawyer if necessary."
>
> January 7, 2008 e-mail message from Thomas A. Della Croce:
> [Mr. Della Croce discusses the ongoing difficulties of securing an arbitrator for each phase.] ". . . you have the right to reject Garcia-Linares . . . [h]owever, please understand that, from my standpoint, I don't want to take additional time commencing a search for and interviewing . . . arbitrators . . . since [Judge] Chesler's Order is already over a year old. . . . Thus, perhaps we should just implement paragraph 4 as I indicated in my last e-mail, which is below. In that regard, I stand ready to submit the name of an individual to confer with whomever you identify, so that they can get to the task of picking a single arbitrator to handle everything."
>
> January 8, 2008 e-mail message from William Brown
> "OK. Let us use Danny and Garcia Linares."

(*Id.*)

The Court has considered the arguments set forth in both sets of briefing papers and during oral argument and finds Plaintiff's arguments more persuasive. While the Defendants accurately cite the law, they do not persuasively apply the law to the present facts. For example, the Defendants argue that "the scope of a consent decree must be discerned within its four corners, and not by reference to what might satisfy the purposes of one of the parties to it." (Defs.' Moving Br. 12, citing *Armour & Co.*, 402 U.S. at 682.) The Defendants further argue that:

> The mechanism the Consent Order established for resolving this dispute is precise. This Court may not make a judgment that an alternative might be just a good. "A Court should not later modify the decree by interposing terms not agreed to by the parties or not included in the language of the decree."

(*Id.* at 12-13, citing *Harris v. City of Phila.*, 137 F.3d 209, 212 (3d Cir. 1998).)

However, in the present case, the Court is not attempting to reference "what might satisfy the purposes *of one of the parties*" to the Consent Order. (*Id.* at 12, emphasis added.) *Both* parties were satisfied to deviate from the express arbitrator-selection provision. Moreover, the Court is not at all attempting to interpose terms not agreed to by the parties. Rather, the parties in the present case explicitly agreed to the alternative arbitrator-selection procedure. Notably, the Defendants proposed the deviation from the express Consent Order term. Significantly, an objective reading of the e-mail messages provided by the Plaintiff demonstrates the Defendants still understood that the arbitration was pursuant to the Consent Order. Clearly, in response to Plaintiff's e-mail messages, in which the urgency of deciding upon an arbitrator was expressed *because the Consent Order had been issued over a year prior*, the Defendants understood that the selection process was being executed in furtherance of the Consent Order. (Della Croce Aff. 50-52, Ex. G at 1-3.) In fact, Plaintiffs offered to utilize the process specifically set forth in paragraph four of the Consent Order, but Defendants declined. The e-

mail message exchange indicates that the parties were acting pursuant to the terms of the Consent Order when they chose the Arbitrators and engaged them in arbitration.

While the Consent Order provided a specific procedure by which the parties would choose arbitrators and arbitrate their dispute, the parties chose to select the Arbitrators in a different fashion and proceeded with arbitration with the Arbitrators for over a year. The Defendants had ample time to object to the procedure. The Defendants did not object to the procedure because, as set forth above, they suggested the procedure. Moreover, Plaintiff suggested that the parties utilize the specific procedures set forth in paragraph four of the Consent Order. Defendants, instead, continued to engage in the arbitrator-selection process and subsequent arbitration without objection, until an adverse ruling prompted them to sever the engagement agreements with the Arbitrators.

The Court finds that the parties were attempting to comply with the overall directives of the Consent Order when they utilized the alternative selection process for the arbitrators and proceeded with arbitration thereafter. After a consideration of the totality of facts, this Court understands the parties to have proceeded under the overall directives of the Consent Order, despite their utilization of two arbitrators as opposed to one. Therefore, the undersigned respectfully recommends that the Court order the parties to proceed with the arbitration proceedings before the Arbitrators.[2]

---

[2] Defendants place great emphasis on the issue of the engagement agreements entered into between the parties and the arbitrators. Pursuant to the terms of the Consent Order, the parties were required to engage at least one arbitrator. Because the Consent Order inherently contemplated the necessity of retaining an arbitrator by way of an engagement agreement, the retention of an arbitrator—or here, Arbitrators—goes to the very heart of the Consent Order. Defendants contend that the engagement agreements with the Arbitrators should be viewed as "Collateral Agreements," unenforceable by this Court (1) due to the fact that the agreements are outside of the scope of the Consent Order; and (2) because of a purported lack of jurisdiction resulting from the Court's inability to compel the Arbitrators, because the Arbitrators are not before this Court. (Defs.' Moving Br. 14-15.) The Court is not persuaded by either argument. First, as Plaintiff notes, the "hiring . . . of the Arbitrators goes to the very crux of the proceedings." (Pl.'s Moving Br. 12.) If an arbitrator was not retained by way of a separate engagement, "the parties could not have . . . proceeded to arbitration, as mandated by the Consent Order." (*Id.*) Because the hiring of an arbitrator was thus integral to the success of the

B.   **<u>Equitable Estoppel</u>**

The Court may also grant Plaintiffs' motion pursuant to the doctrine of equitable estoppel. Under New Jersey law,[3] "[e]quitable estoppel is the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed . . . as against another person, who has in good faith relied upon such conduct and has been led thereby to change his position for the worse . . . ." *CapitalPlus Equity, LLC v. Prismatic Dev. Corp.*, No. 07-321, 2008 WL 2783339, at *3 (D.N.J. July 16, 2008) (quoting *Highway Trailer Co. v. Donna Motor Lines, Inc.*, 46 N.J. 442, 449 (1966)). Equitable estoppel prevents a party from changing or disavowing its previous conduct "if such repudiation 'would not be responsive to the demands of justice and good conscience.'" *W. Jersey Title & Guar. Co. v. Indus. Trust Co.*, 27 N.J. 144, 153 (1958) (quoting *N.J. Suburban Water Co. v. Harrison*, 122 N.J.L. 189, 194 (1939)). To apply the doctrine, the Court must find that there is proof of a "misrepresentation . . . of material facts known to the party allegedly estopped and unknown to the party claiming estoppel . . . ." *Metrobank for Sav., FSB v. Nat'l Cmty. Bank of N.J.*, 262 N.J. Super. 133, 145 (1993) (quoting *Carlsen v. Masters, Mates & Pilots Pension Plan Trust*, 80 N.J. 334, 339 (1979)). The party misrepresenting facts must do so with the expectation that the other party would act upon it and the other party must

---

Consent Order, the agreements cannot be dubbed "collateral." Second, this Court does not seek to compel the Arbitrators to do anything—rather, it seeks only to exercise its jurisdiction to ensure the parties' compliance with the Consent Order. There is no indication whatsoever that the Arbitrators are not willing to proceed with the arbitration. Rather, the argument appears to be manufactured by Defendants to avoid proceeding with arbitration.

In addition, Defendants assert that the forum selection clause within the accounting arbitrator's engagement agreement, as well as the potential difficulty of this Court's procurement of personal jurisdiction over either of the Arbitrators, preclude the Court's ability to compel Defendants to continue to arbitrate with their selected Arbitrators. (Defs.' Moving Br. 14-15.) Defendants' argument is unpersuasive because the forum selection clause and matters of personal jurisdiction are inapplicable to this Court's recommendation that the parties proceed with arbitration.

[3] New Jersey law is controlling in this Diversity action. (*See* Consent Order ¶ 6.)

rely on it so as to change its position for the worse. *Id.* Finally, the party's "reliance must be reasonable and justifiable." *Foley Mach. Co. v. Amland Contractors, Inc.*, 209 N.J. Super. 70, 75 (App. Div. 1986).

Here, Plaintiff argues that Defendants should be estopped from asserting any entitlement to terminate the Arbitrators and start the arbitration anew. (Pl.'s Moving Br. 22.) Indeed, Plaintiff has satisfied the relevant factors for equitable estoppel. First, at Defendants' urging, the parties retained two Arbitrators and voluntarily entered into engagement agreements with them. (*Id.*) The Defendants represented their actions in executing these engagements as being in compliance with the terms of the Consent Order. If Defendants truly viewed these engagements as experimental, then the way in which they represented the process to the Plaintiff was misleading. Indeed, Defendants' urging and encouragement within the e-mail messages demonstrate that they induced Plaintiff into action by reassuring Plaintiff that Defendants, too, wanted to "avoid going back to square one" once the arbitrators were chosen. (*Id.*; Della Croce Aff. 46, Ex. F at 2.) Defendants also expected that Plaintiff would enter into the engagements and proceed with arbitration.

In reasonable reliance on Defendants' statements, Plaintiff entered into the agreements with the Arbitrators. During the course of arbitration, Plaintiff has expended $300,000 in fees and expenses and 700 attorneys' hours, which would be forfeited if Plaintiff's motion were now denied—a position that would leave the Plaintiff "worse off" than it was prior to its participation in the arbitration proceedings. (Pl.'s Moving Br. 22-23.)

Defendants argue that (1) Plaintiff has not proven the elements of equitable estoppel; (2) Plaintiff did not rely on any statement made by the Defendants; and (3) the remedy, if provided, should

be limited to reimbursement of Plaintiff's expenses and fees.[4] (Defs.' Opp'n Br. 26-28.) This Court disagrees. First, this Court believes that Plaintiff has satisfied the elements of estoppel. Second, this Court finds that Contel has duly relied on statements made by the Defendants. Despite Defendants' assertions, this Court is not convinced that Contel believed that the process the parties engaged in represented only an "experiment." (*Id.* at 27.) As discussed above, there is no evidence to suggest that Plaintiff assumed the selection of the Arbitrators to be an "experiment"— Contel never assumed that either party could walk away. Lastly, as Defendants themselves note, the "remedy for reliance must be limited as justice requires." (*Id.* at 28.) Here, the Court is able to fashion a remedy that is narrowly tailored and just to the underlying circumstances—to compel Defendants to proceed with arbitration with the Arbitrators they have chosen.

### III. Conclusion

For the reasons set forth above, and for good cause shown, the undersigned respectfully recommends that the Court grant Plaintiff's motion to compel the parties to arbitrate with the Arbitrators they chose and deny Defendants' motion to enforce the consent order as written.

s/ Michael A. Shipp
**HONORABLE MICHAEL A. SHIPP**
**UNITED STATES MAGISTRATE JUDGE**

Dated: July 15, 2010

---

[4] In support of this assertion, the Defendants cite *Goodman v. Dicker*, 169 F.2d 684 (D.C. Cir. 1948) ("[t]he true measure of damage is the loss sustained by expenditures made in reliance upon the assurance . . . .") and *Restatement (Second) of Contracts* § 90 (1) and cmt. d. (Def.'s Opp'n Br. 28.) However, *Goodman* is distinguishable because the *Goodman* Court limited the award to reliance damages. Also, as *Restatement (Second) of Contracts* § 90 (1) provides, "[t]he remedy granted . . . may be limited as justice requires." Thus, courts have discretion to fashion the most appropriate remedy in accordance with justice. Here, the most appropriate remedy is to grant Plaintiff's motion and compel the Defendants to continue arbitration with the Arbitrators that they themselves chose.

11