NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| CONTEL GLOBAL MARKETING, INC., | : : | |
| Plaintiff, | : : | **Civil Action No. 01-0238 (SRC)** |
| v. | : : | **OPINION** |
| COTERA, et al., | : : | |
| Defendants. | : : | |

**CHESLER**, District Judge

      This matter comes before the Court upon the motion by Plaintiff Contel Global Marketing, Inc. ("Plaintiff") to Confirm in Part and Modify in Part the Arbitration Award. Defendants Aldo Pesce Cotera, et al. ("Defendants") oppose the motion and cross-move the Court to Vacate the Arbitration Award. The Court has considered the parties' submissions and proceeds to rule without oral argument. For the reasons that follow, the Court will confirm the Arbitration Award in its entirety.

    I.    **BACKGROUND**

      **A. Factual and Procedural History**

    Plaintiff in this action is Contel Global Marketing, Inc. ("Contel" or "Plaintiff"). Defendants are Aldo Pesce Cotera ("Cotera") and three companies that Cotera controlled: Clear

1

River Corp., Nova Agencia DeCarga, and Agricola Punta Arenas Lida (collectively "Defendants"). In the 1990s, Plaintiff and Defendants agreed to engage in a business in which they would export fruit and vegetables from Chile to the United States and sell the produce in American supermarkets. The terms of the parties' agreement spanned from 1996 until 2000. Pursuant to their arrangement, Defendants procured produce from Chile and then shipped it to the U.S., and Plaintiff negotiated with U.S. supermarkets to sell the imported products. The parties agreed to share profits equally. Over the course of four seasons, the parties sold over 1.2 million cases of fruits and vegetables, totaling nearly forty million dollars' worth.

Plaintiff sued Defendants in January of 2001, alleging fraud. Specifically, Plaintiff claimed that for four years, Defendants faxed Plaintiff over 1,100 invoices that overstated Defendants' costs and failed to disclose Defendants' rebates (namely discounts, credits, and refunds that Defendants had received), allowing Defendants to reap a disproportionate share of the parties' profits. Plaintiff further alleged that when the parties calculated profits through end-of-season reconciliations, Defendants still misrepresented their costs.

The parties commenced discovery in January of 2004. In 2006, Defendants moved for summary judgment.

On December 15, 2006, this Court issued a Consent Order ("the Consent Order"), pursuant to which the parties agreed to engage in a two-phase arbitration. In the first phase, an arbitrator would reconcile the parties' 1996-2000 accounts. In the second phase, the same arbitrator was to decide the parties' legal claims and defenses. The Consent Order provided that in phase one, the arbitrator would apply generally accepted accounting principles ("GAAP") and conduct an inquiry "in any manner the arbitrator deems appropriate." [Docket Entry 85, Pg. 2].

2

The Consent Order further provided that phase two would involve a hearing governed by the Federal Rules of Civil Procedure and the Federal Rules of Evidence. Finally, the Consent Order required Plaintiff and Defendants to both post a three-million dollar cash bond "for the purpose of satisfying" an eventual award. [Id. at Pg. 3]. Both parties posted the required bond.

Ultimately, the parties could not agree to a single arbitrator. They instead agreed to retain two arbitrators, one for each phase: Kevin Condon, a certified public accountant ("CPA"), for the phase-one account reconciliation ("the Accounting Arbitrator"); and Manuel Garcia-Linares, an attorney, for phase two's determinations ("the Legal Arbitrator"). The arbitrators' engagement agreements permitted the Accounting Arbitrator to seek and rely upon the Legal Arbitrator's advice and to request additional information from the parties.

### B. Phase One of the Arbitration

Although the Consent Order stated that fact discovery had closed, in September of 2008 the parties submitted new expert reports to the Accounting Arbitrator. The following month, the Accounting Arbitrator issued questions to the parties relating to their new reports. In response, Defendants sought to submit additional accounting documents, including Cargo Account Settlement System ("CASS") statements. Defendants had not submitted these documents during discovery, which prompted Plaintiff to object to their admission. The Accounting Arbitrator referred the question of the documents' admissibility to the Legal Arbitrator, who received briefs from both parties and then recommended that the documents be excluded. In November of 2009, the Accounting Arbitrator followed that recommendation and excluded the documents.

Defendants argued -- and still maintain -- that the exclusion of those documents was erroneous. In response to that ruling, Defendants sought to terminate both arbitrators from the

proceedings. In December of 2009, Plaintiff moved to compel that the arbitration continue. Defendants countered that the proceedings should begin anew because the arbitration now involved two arbitrators even though the Consent Order provided only for one. In July of 2010, then-Magistrate Judge Michael A. Shipp recommended that the District Court compel the arbitration to continue, as both parties had agreed to select two arbitrators. On September 30, 2010, this Court entered an Order and Opinion adopting that recommendation. The Court rejected Defendants' arguments regarding the arbitrators: "[N]o court in good conscience, after reviewing this record, could conclude that Defendants, having induced Plaintiff to arbitrate in good faith, should now be permitted to declare a 'do-over' because they do not like the arbitrator's rulings." [Docket Entry 109, Page 5].

Once back in arbitration, Defendants sought to introduce additional expert reports to the Accounting Arbitrator. Plaintiff successfully moved to bar these additional submissions.

On October 7, 2011, after considering the parties' submissions, the Accounting Arbitrator issued his determination regarding the reconciliation of accounts. He found that the parties had arranged for the equal sharing of profits and losses for four seasons. He further concluded that Defendants had overbilled Plaintiff for produce and shipping by over $1.6 million. The Accounting Arbitrator then adjusted this number for Defendants' additional costs, a loan that Defendant Pesce had made to Plaintiff, and funds that Plaintiff withheld from Plaintiff at the end of the 1999-2000 season. Ultimately, the Accounting Arbitrator calculated the Phase One Award as Defendants having overcharged Plaintiffs in the amount of $1,279,622.

### C. Phase Two of the Arbitration

In Phase Two, the Legal Arbitrator took notice of the Phase One findings regarding the amount of Defendants' overbilling.  The Legal Arbitrator also issued a pre-trial order, pursuant to which the parties exchanged claims and defenses, contested and uncontested facts, lists of exhibits and witnesses, and additional summaries and memoranda.  The Legal Arbitrator heard argument and issued decisions on five pre-trial motions.  Among his decisions was a determination that the Accounting Arbitrator's findings were conclusive on the issues of breach, recoupment, and set-off.  Defendants maintain that this conclusion constituted an error, and that the Legal Arbitrator should have considered those issues anew.

Trial took place from June 3 until June 6, 2013.  The Legal Arbitrator considered testimony from five witnesses as well as 48 exhibits.  Among the witnesses was Plaintiff's accounting expert, whose testimony was offered to demonstrate that the only explanation for Defendants' billing discrepancies was intentional overbilling.

On November 7, 2013, the Legal Arbitrator rendered a decision.  He held that Defendants breached their contract with Plaintiff through overbilling during four seasons, and he accordingly awarded Plaintiff the sum of $1,279,622. [Silver Decl., Ex. K, 53].  The Legal Arbitrator additionally found that Plaintiff had proven by clear and convincing evidence that Defendants had engaged in common law fraud; and that Plaintiff had proven by a preponderance of evidence that Defendants conducted a criminal enterprise to commit a pattern of wire fraud against Plaintiff, in violation of the Federal Civil RICO statute.  The Legal Arbitrator awarded Plaintiff treble damages, and found that Plaintiff was statutorily entitled to reasonable attorneys' fees and costs.  The total award rendered by the Legal Arbitrator was approximately $8.6 million.

On April 2, 2014, the Legal Arbitrator held an evidentiary hearing regarding attorneys' fees and costs. On June 5, 2014, he issued a second opinion, awarding Plaintiff certain fees and costs, but not others. He denied Plaintiff's claims to recover its expert witness fees; arbitrators' fees; and the net interest on the court-required deposit.

### D. The Instant Motions[1]

Plaintiff moves the Court to confirm in part and modify in part the arbitrators' award. Specifically, Plaintiff requests two categories of modifications: (1) first, Plaintiff seeks to modify the Accounting Arbitrator's decision to credit Defendants for payments made to certain entities despite the alleged lack of evidence of those payments; (2) second, Plaintiff seeks to recover its additional costs of suit. In all other respects, Plaintiff seeks to confirm the arbitrators' award. Plaintiff also moves for pre-judgment interest and for the release of Defendants' deposit.

Defendants oppose Plaintiff's motion. Defendants additionally cross-move to vacate the arbitrators' award and to appoint a special master who can begin the reconciliation process anew.

## II. DISCUSSION

### A. Standard of Review

Pursuant to paragraph 7 of the Consent Order, this Court may review "whether the findings of fact rendered by the arbitrator are, on the entire record of the arbitration proceedings, supported by substantial evidence," and may examine "whether as a matter of law based on the finding of facts, the award should be affirmed, modified, or vacated." [Docket Entry 85, Pg. 3].

---

[1] On July 25, 2014, Plaintiff moved to confirm in part and modify in part the arbitrators' award. Defendants opposed the motion. On December 9, 2014, after initial briefing, this Court ordered the parties to resubmit their papers with improved records.

"Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004) (internal citation and quotation marks omitted). "It is less than a preponderance of the evidence but more than a mere scintilla . . . . [T]he substantial evidence standard is a deferential standard of review." Id. When evaluating a record for substantial evidence, the reviewing court may not "weigh the evidence or substitute [its own] conclusions for those of the fact-finder[.]" Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005).

Applying that standard, this Court finds the arbitration award to be supported by substantial evidence in the record, and the Court affirms the arbitrators' legal determinations. The Court is unpersuaded by Plaintiff's arguments in favor of modifying the award, as well as by Defendants' arguments to vacate it altogether. In short, the Court is satisfied that the arbitration proceedings involved a careful reconciliation of the parties' accounts based on the available record, and a sound application of the governing laws. The Court will accordingly affirm the award in its entirety.

### B. Defendants' Objections

The Court will address Defendants' principal arguments in favor of vacating the award. For reasons set forth herein, the Court rejects these contentions and will confirm the award.

#### i. Sufficiency of the Evidence

Defendants first argue that the award is premised upon facts not supported by the record. Specifically, Defendants urge that there was insufficient evidence to support the arbitrators' findings, particularly of overbilling and a joint venture. Defendants further assert that the arbitrators relied upon inadmissible testimony from Plaintiff's accounting expert.

7

The Court does not agree with these assertions, as both arbitrators pointed to substantial record evidence to support each of their conclusions. In Phase One, the Accounting Arbitrator relied upon an abundance of documentary evidence indicative of Defendants' systematic overbilling of Plaintiff. Defendants' main argument to the contrary is that the Accounting Arbitrator should not have relied upon the testimony or findings of Plaintiff's accounting expert. The Court finds that reliance upon that individual was entirely proper, as all of the expert's "methods and findings were consistent with those of [the Accounting Arbitrator] in Phase I." [Silver Decl., Ex. K, 63]. Defendants' challenge to the admissibility of this expert's testimony rests on disparities between his numerical conclusions and those of the Accounting Arbitrator. Attacks on an expert's precise conclusions, however, are not grounds to render that testimony inadmissible. See generally Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 594-95 (1993) ("The inquiry envisioned by Rule 702 is, we emphasize, a flexible one. Its overarching subject is the scientific validity and thus the evidentiary relevance and reliability—of the principles that underlie a proposed submission. The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate."); see also Elcock v. Kmart Corp., 233 F.3d 734, 754 (3d Cir. 2000) (noting "mathematical exactness is not required"). The Court finds that the expert's testimony was admissible under Daubert and evidentiary rules.

Defendants further attack the sufficiency of the evidence by asserting that Plaintiff failed to produce sales documents in discovery. It appears to the Court that Plaintiff did, in fact, produce evidence of what it asserted to be sales records. [See Carolla Decl., Ex. 25, at 442:21-447:3]. Plaintiff's accounting expert testified that he reviewed Plaintiff's sales invoices and found them to be accurately reflected in Plaintiff's sales summaries, which he then used in

8

fashioning his own report. [See id.; Carolla Decl., Ex. 27, at 621:13-625:8]. It further appears that the Accounting Arbitrator had access to all documents produced during discovery. [See Silver Decl., Ex. K, 3 (noting that Accounting Arbitrator "took into account all evidence presented by the parties, including all expert reports and exhibits"), 8 (noting that Accounting Arbitrator "had access to all documents produced by the parties during discovery . . . [and] had access to and considered the submissions of both parties' experts[.]"), 48 (again noting that Accounting Arbitrator "gave the parties ample opportunity to present their case . . . [and] took into account all evidence and expert reports presented to him.")].

     Defendants next challenge the finding that the parties had engaged in a joint venture. The Court upholds the Legal Arbitrator's conclusion that Plaintiff's proofs were adequate to satisfy that doctrine. The Legal Arbitrator invoked the five elements needed to establish a joint venture, and he then cited and relied upon substantial evidence in the record to find them met. [Id. at 57-61]. Specifically, he found the evidence to show that the parties: (1) agreed to engage in a common enterprise of purchasing, importing, and selling Chilean produce; (2) contributed to the common enterprise, as Mr. Pesce offered his business relationships and financial assistance, among other assets, and Mr. Conte provided his company, warehouse, and cash advances; (3) shared joint property in the form of the produce and profits; (4) exercised significant influence over the management of the business; and (5) again, agreed to share profits and losses equally. [Id.]. The Legal Arbitrator noted that in addition to the evidence supporting such findings, Defendant Pesce admitted that the parties were engaged in a joint venture. [Id. at 60]. The Court finds the Legal Arbitrator's determination that a joint venture existed to be justified, as well as the concomitant decision that the economic loss doctrine did not bar Plaintiff's claim.

9

In sum, the Court finds the factual record to wholly support the arbitrators' findings, including all of those which Defendants challenge.

### ii. Legality of the Rulings

Defendants next contend that the Legal Arbitrator's various decisions were out of step with the governing law. The Court disagrees, and will address Defendants' assertions in turn.

Again raising the issue that first prompted Defendants to exit this arbitration in late 2009, Defendants argue that the arbitrators violated various rules and regulations by failing to consider additional documentary evidence that Defendants proffered. The Court will uphold the decision to exclude this evidence. With respect to the CASS Statements, Defendants were required to produce such documents during discovery, and the Consent Order expressly states that discovery had closed. Plaintiff's complaint alleged that Defendants had inflated their shipping costs, and Defendants' CASS Statements were offered to defend against that allegation. Accordingly, those documents were subject to discovery. See Fed. R. Civ. P. 26(a)(1)(A)(ii) ("[A] party must, without awaiting a discovery request, provide to the other parties . . . all documents . . . [that it] may use to support its claims or defenses[.]"). Plaintiff also requested all documents relating to Defendants' cargo shipment payments, and yet Defendants still did not produce them. This omission foreclosed Plaintiff from assessing or challenging the documents' authenticity or reliability, and Defendants have not offered any substantial justification for their failure. Additionally, it appears Defendants have suggested that the information included in the CASS Statements had already been incorporated into documents which were handed over in discovery, and which the arbitrators did consider. [See Docket Entry 160, Document 43 ("We are sure that

all the information in the Cass statements was produced during discovery and all of the checks and airway bill[s] referred to in the Cass statements have bates stamp numbers on them.")].

For these reasons, the Court upholds the recommendation and subsequent decision to exclude these belated papers. See Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."); Konstantopoulos v. Westvaco Corp., 112 F.3d 710, 719 (3d Cir. 1997) ("The trial court's exclusion of testimony because of the failure of counsel to adhere to a pretrial order will not be disturbed on appeal absent a clear abuse of discretion."); In re TMI Litig., 193 F.3d 613, 721 (3d Cir. 1999)).  The Court's endorsement of this decision disposes of Defendants' various allegations that this exclusion violated evidentiary rules and accounting principles.

Defendants next contend that the Legal Arbitrator violated the Consent Order by simply adopting, rather than independently trying or deciding, the parties' contractual dispute.  The Court rejects this argument as inaccurate and, in any event, unpersuasive.  Pursuant to his task of reconciling the parties' accounts, the Accounting Arbitrator found substantial evidence that Defendants had overbilled Plaintiff throughout the course of their relationship.  Because the parties' agreement called for costs and profits to be split evenly, the Legal Arbitrator deemed the systematic overbilling to be an implicit finding of contractual breach, and he then took notice of that finding.  Defendants call that improper.  The Consent Order, however, did not prohibit the Legal Arbitrator from relying upon earlier findings.  The text of the Order contemplated one, rather than two arbitrators, and it thus cannot be easily read to strictly bifurcate authority

between two assessors or to require duplication of tasks.  The Court further finds that Defendants' decision to initially proceed with the arbitration with two arbitrators constituted a ratification of that arrangement.

In any event, even if the reliance by the Legal Arbitrator were improper, he went on review the record himself, and he independently reached consistent conclusions regarding the parties' relationship and conduct.  Put differently, he made clear that he was not blindly relying upon the earlier decisions:

> Notwithstanding that the Phase II Arbitrator has previously taken judicial notice of the Final Determination of Mr. Condon and has held that Mr. Condon's findings were 'necessarily conclusive on the issues of breach of contract, recoupment and set-off', the Arbitrator nonetheless finds that, at trial, the parties presented sufficient evidence for the Phase II Arbitrator to make his own independent findings regarding the terms of the parties' business relationship—which findings are consistent with those of Mr. Condon—as discussed herein below.

[Silver Decl., Ex. K, 48].

The Legal Arbitrator thoroughly reviewed the trial evidence that Plaintiff introduced to prove fraud, which implicated the exact same conduct needed to conclude that there had been a contractual breach.  The Legal Arbitrator cited and outlined extensive evidence demonstrating that the parties had agreed to equally share costs and profits, that they never altered that arrangement, and that Defendants consistently inflated their costs in violation of that arrangement.  Such evidence was enough to independently find a contractual breach.  In short, the Court upholds the Legal Arbitrator's finding that "[a]t trial, [Plaintiff] presented an abundance of documents and other evidence which demonstrated that . . . the parties conducted themselves in conformity with a 50/50 profit-and-loss sharing relationship for all four seasons"

and that "Defendants breached [that] agreement[.]" [Id. at 52-53]. It follows that Defendants' other assertions on this point -- namely, that this and other alleged deficiencies forced Defendants to arbitrate beyond their consent -- are also unavailing.

The Court also finds that the Legal Arbitrator did not stop Defendants from presenting their affirmative defenses to the claim of breach, which they now contend. The Legal Arbitrator was clear on this point. [See Ex. 26, 30:24-31:16 ("I am not restricting you in any way from raising any of the defenses you have [to the breach of contract claim], which some of them are now affirmative claims . . . . I am not going to retry items that are in the reconciliation, but to the extent that you have defenses that you would like to raise, you are going to raise those defenses."); Della Croce Decl., Ex. 35, 175:10-176:11 ("You stated that it was because of my rulings that you've now decided only to proceed on two affirmative defenses. Which of my rulings? . . . . That's your decision.")]. In any event, the Court is further persuaded that Defendants' proposed defenses of satisfaction and release suffered from critical deficiencies.

Next, Defendants urge that the Legal Arbitrator violated the Consent Order by awarding Plaintiff more than the $3 million bond that Defendants posted with the Court. The Consent Order does not limit recovery to the amount of the bond, and the cases to which Defendants cite govern wrongfully issued injunctions, which are not at issue here. Similarly inapposite are Defendants' citations regarding the abatement of judgments, which has not taken place here; Defendants have provided no persuasive authority for why the posting of a mandatory bond would negate the punitive aims inherent in trebled damages.

Defendants also argue that Plaintiff failed to plead fraud with particularity. The Court disagrees. In his ruling on the parties' motions in limine, the Legal Arbitrator soundly concluded

13

that Plaintiff's pleadings "were more than sufficient to satisfy the legal requirements of Rule 9(b)." (Silver Decl., Ex. J at 4). As he noted, Plaintiff's complaint "adequately describes the nature and subject of the alleged misrepresentation[.]" (Id. (quoting Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir. 1984)). Plaintiff's pleadings set forth the nature of Defendants' alleged misrepresentations by claiming that Defendants failed to accurately report their costs and profits, and specifying that Defendants overstated growers' charges, inflated transportation costs, and failed to report refunds. Plaintiff additionally pleads the subject of the misrepresentations by identifying, in extensive detail, the produce that prompted the alleged fraud.

    Further attacking Plaintiff's proofs, Defendants additionally assert that neither the elements of fraud nor a RICO violation were proven at trial. To prove common law fraud under New Jersey law, one must demonstrate: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." Gennari v. Weichert Co. Realtors, 691 A.2d 350, 367 (N.J. 1997). The Court upholds the Legal Arbitrator's determination that Defendants' consistent overcharging -- to wit, submitting approximately 1,100 inflated invoices over a period of multiple seasons, and failing to correct such inaccuracies at season-end reconciliations -- is more than adequate to find that Defendants knowingly misrepresented material facts to Plaintiff. See generally Gilchinsky v. Nat'l Westminster Bank N.J., 732 A.2d 482, 490 (N.J. 1999) ("[F]raudulent intent, by its very nature, is rarely susceptible to direct proof . . . . Actual intent often must be established through inferential reasoning, deduced from the circumstances surrounding the allegedly fraudulent

act."). The rate, volume, and multi-year duration of the misstatements fairly allow for the conclusion that Defendants' conduct was not mere negligence or mistake. The Court also upholds the finding that Plaintiff relied upon Defendants' misrepresentations by trusting their invoices and paying Defendants based upon their content. Such reliance was reasonable given the parties' years of having done business together prior to this agreement; the trust that they built while setting up this operation; the fast-paced nature of their business; and the fact that Defendants' misstatements were small on a per-unit basis.

With respect to the civil RICO violation, the Court finds the Legal Arbitrator's analysis to have been diligent and correct. Defendants urge that there was no proof of mail fraud, mens rea, or continuity. Defendants' arguments as to wire fraud and scienter simply repeat the objections made in the context of common law fraud, and such views are unpersuasive for the reasons just discussed. The Legal Arbitrator did not err in its findings of mail fraud and specific intent to defraud. Finally, as to continuity, the Court agrees with the Legal Arbitrator's view that substantial evidence demonstrated "not a series of disconnected, haphazard acts" but rather "a sophisticated fraud consisting of hundreds upon hundreds of separate predicate acts," [Opinion at 79-80]. The Legal Arbitrator correctly concluded that Defendants' "pattern" of misconduct, together with the four-year period in which it took place, indicated closed-end continuity. See Tabas v. Tabas, 47 F.3d 1280, 1294 (3d Cir. 1995) (finding conduct lasting three and a half years to be sufficient). The Court further supports the conclusion that Defendants' scheme would have continued had it not been discovered.

Defendants also attack the Legal Arbitrator's decision to award Plaintiff prejudgment interest. They point out that they never knew they owed Plaintiff money, and so the equities

weigh against awarding interest.  The Court does not share that assessment.  The Legal Arbitrator exercised discretion to award interest to Plaintiff, who had prevailed on a breach of contract claim, particularly because Defendants were given but forewent numerous opportunities to correct their accounting at season-end reconciliations.  [Opinion at 53, 55-56] (citing Litton Indus., Inc. v. IMO Indus., Inc., 982 A.2d 420, 430 (2009) ("Thus the award of prejudgment interest in a contract case is within the sound discretion of the trial court . . . . [as is] the rate at which prejudgment interest is calculated[.]").  "[T]he primary consideration in awarding prejudgment interest is that the defendant has had the use, and the plaintiff has not, of the amount in question; and the interest factor simply covers the value of the sum awarded for the prejudgment period during which the defendant had the benefit of monies to which the plaintiff is found to have been earlier entitled."  Litton Indus., 982 A.2d at 430-31 (internal quotation marks and citation omitted).  The Court finds that primary consideration to weigh in favor of Plaintiff here, and it upholds the Legal Arbitrator's exercise of discretion on this issue.

Looking to Defendants' final argument, they assert that the Legal Arbitrator erred in awarding Plaintiff attorneys' fees.  A plaintiff who successfully prevails on a Civil RICO claim "shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee[.]"  18 U.S.C. § 1964(c) (emphasis added).  The Legal Arbitrator thus acted correctly when he awarded attorneys' fees to Plaintiff, and he was not required to entertain a motion or weigh factors on the issue.  See Fed. R. Civ. P. 54 (requiring motion "[u]nless a statute or a court order provides otherwise").

16

All told, for these reasons, the Court rejects Defendants' arguments and upholds the arbitrators' determinations, both with respect to all the primary issues discussed here and any others raised by Defendants.

### C. Plaintiff's Proposed Modifications

The Court now briefly addresses Plaintiff's proposed modifications. Plaintiff's arguments are far fewer than Defendants', as Plaintiff largely seeks to uphold the award. For reasons discussed below, the Court is not persuaded that the arbitrators erred in any of the ways Plaintiff suggests, and it will not disturb the judgment rendered.

Plaintiff first asserts that the Court should modify certain of the Accounting Arbitrator's decisions to credit Defendants for payments made to carriers. Plaintiff asserts that such credits were not supported by evidentiary proofs. The Court upholds the Accounting Arbitrator's calculations, and notes that he relied upon a host of documents available, including air waybills, to reach his determinations. The Court does not necessarily find each of the challenged credits to be certain or correct, but the Court does find the Accounting Arbitrator's determinations to be a reasonable and intelligent assessment of costs and payments based on the documents available to him. Where there was documentation of costs reasonably tied to the parties' contract, credit was given; where proof was lacking, credit was denied. Account reconciliation is not an exact science, and the Court endorses the Accounting Arbitrator's efforts here. The parties bargained for a quality reconciliation of accounts through arbitration, and that is what they received.

Next, relying upon the language of 18 U.S.C. § 1964(c), which mandates recovery for "costs of the suit[,]" Plaintiff argues that the fee award should expand to include its share of the arbitrators' fees; expert witness fees; and interest on the $3 million deposit it posted with the

17

Court. The Legal Arbitrator denied those claims, holding that Plaintiff's recoverable costs of suit were limited to taxable items under 28 U.S.C. § 1920 and witness fees as delineated under 28 U.S.C. § 1821, and any other explicit authorizations.

To support its argument against that decision, Plaintiff cites to nonbinding authority from outside this jurisdiction. See Uniroyal Goodrich Tire Co. v. Mut. Trading Corp., 63 F.3d 516, 526 (7th Cir. 1995) (endorsing analogy between costs under RICO to those available in civil rights cases, which may include expert witness fees); Vanderbilt Mortgage & Fin., Inc. v. Flores, No. CIV.A. C-09-312, 2011 WL 2160928, at *7 (S.D. Tex. May 27, 2011) (rejecting assumption that costs are necessarily limited to those taxable under § 1920); Hertz Corp. v. Caulfield, 796 F. Supp. 225, 229 (E.D. La. 1992) ("The plaintiff has cited no authority which delineates the extent of the 'costs' to which a RICO plaintiff may be entitled . . . . [C]ivil rights attorneys' fees cases may be instructive . . . [which] may include those expenses which are incorporated in neither the lawyer's billing hours nor the statutory costs."); see also Fed. Proc., Lawyers Edition, 5B Fed. Proc., L. Ed. § 10:261 ("A prevailing civil RICO plaintiff may recover costs beyond the statutory costs provided for by Fed. R. Civ. P. 54(d) and 28 U.S.C.A. § 1920, since the costs available to a prevailing party under 18 U.S.C.A. § 1964(c) are equivalent to those allowable in a civil rights case.") (citing exclusively to Hertz, supra, 796 F. Supp. 225).

The Court finds the analogy between recovery under RICO and civil rights provisions to be unsupported. The U.S. Supreme Court has held that federal courts may not award litigation costs beyond those set forth in §§1920 and 1821 unless another provision explicitly permits additional fee-shifting. In W. Virginia Univ. Hospitals, Inc. v. Casey, the Supreme Court explained as follows:

18

> Title 28 U.S.C. § 1821(b) limits the witness fees authorized by § 1920(3) . . . . [T]hese provisions define the full extent of a federal court's power to shift litigation costs absent express statutory authority to go further. [We have held that when] a prevailing party seeks reimbursement for fees paid to its own expert witnesses, a federal court is bound by the limits of § 1821(b), absent contract or explicit statutory authority to the contrary. We will not lightly infer that Congress has repealed §§ 1920 and 1821, either through [Federal Rule of Civil Procedure] 54(d) or any other provision not referring explicitly to witness fees.
>
> [499 U.S. 83, 86-87 (1991) (quoting Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437 (1987))].

The Court earlier held in Crawford that "absent explicit statutory or contractual authorization for the taxation of the expenses of a litigant's witness as costs, federal courts are bound by the limitations set out in 28 U.S.C. § 1821 and § 1920." 482 U.S. at 445; see also Securities Litigation: Damages, 26A Sec. Lit. Damages § 22:9 (noting that costs awardable under RICO "include fees spent for clerk, marshall, court reporting, printing, witnesses, copying, docket and court-appointed experts") (citing 28 U.S.C. § 1920).

As a historical matter, in response to the Supreme Court's decision in Casey, Congress explicitly expanded the fees recoverable under the Civil Rights Act. See Landgraf v. USI Film Products, 511 U.S. 244, 251 (1994) (noting that "§ 113 [of the Civil Rights Act of 1991] responds to [Casey], by providing that an award of attorney's fees may include expert fees"); see also Civil Rights Act of 1991, PL 102-166, § 113 ("In awarding an attorney's fee under subsection (b) in any action or proceeding to enforce a provision of section 1977 or 1977A of the Revised Statutes, the court, in its discretion, may include expert fees as part of the attorney's fee."). Conversely, in the context of RICO, the statute's language only generally provides that a successful claimant will receive "the cost of the suit, including a reasonable attorney's fee[.]" 18

19

U.S.C. § 1964(c).  In the absence of any express Congressional amendment to this provision, and in light of the Supreme Court's requirement that Congress expressly authorize fee-shifting beyond that which is already enumerated by statute, the Court is unconvinced that § 1964(c) permits a fee award of the expansive nature sought by Plaintiff.

The Court further upholds the Legal Arbitrator's determination that paragraph nine of the Consent Order expressly states that the parties will split the costs of arbitration, and that such provision forecloses Plaintiff's efforts to recover its share of the cost now.

For these reasons, the Court will deny Plaintiff's requests that the award in its favor be enlarged.  The Court will grant Plaintiff's motion insofar as it seeks confirmation.

### III.     CONCLUSION

For the foregoing reasons, the Court will confirm the Arbitration Award.  The Court thus grants in-part and denies in-part Plaintiff's motion, and the Court denies Defendants' cross-motion.  An appropriate Order with be filed together with this Opinion.

    s/Stanley R. Chesler
STANLEY R. CHESLER
United States District Judge

Dated: July 24, 2015